UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANAMARIA PENALOZA,

       Plaintiff,

                          Case No. 8:11-cv-2656-T-33AEP
v.

TARGET CORPORATION,

       Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Target Corporation's Motion for Summary Judgment, filed on August 29, 2012. (Doc. # 34). Plaintiff Anamaria Penaloza filed a response in opposition on October 2, 2012. (Doc. # 42). Also before the Court is Target's Motion for Partial Judgment on the Pleadings as to Plaintiff's Punitive Damages Claims, filed on October 31, 2012. (Doc. # 46). Penaloza filed her response in opposition on November 14, 2012. (Doc. # 48).

After due consideration, and for the reasons stated in this Order, Target's Motion for Summary Judgment is granted, and Target's Motion for Partial Judgment on the Pleadings is, therefore, denied as moot.

I.   **Factual Background**

Target hired Penaloza to work in Store #812 in Brandon, Florida in August of 2008. (Doc. # 34 at 3). Target claims

that Penaloza was frequently absent from and late to work, (Doc. # 34 at 4), and has submitted records entitled "TM Attendance Details" to support that assertion. (Doc. # 35-2 at 1-6). Penaloza denies being frequently late or absent. (Penaloza Dep. Doc. # 35 at 15). Regardless, Target gave Penaloza positive performance reviews in 2008 and 2009, with a "meets expectations," (Doc. # 45-1 at 2), and an "effective,"(Doc. # 45-2 at 6), respectively. On January 24, 2010, Penaloza informed Target that she was pregnant. (Doc. # 9 at 1). On May 19, 2010, Penaloza received another "effective" on a Team Member Performance Review, but that review also contained several comments, including:

> I challenge you to focus on communicating with your supervisors about any conflicts with your availability. The store is staffed according to the guest traffic and business. When team members do not show for their shifts or do not communicate with their ETL about conflicts with their availability, it makes it difficult for the team to successfully accomplish their tasks. . . .

(Doc. # 45-3 at 3).

Also on May 19, 2010, Target issued Penaloza a written Confidential Corrective Action Report, signed by Erin Robinson. (Doc. # 35-2 at 7). Target claims that it issued the Corrective Action because of Penaloza's alleged failure to call in or to report to work on May 4, 2010, and on May 5,

2010. (Doc. # 34 at 5). The Court finds no record of the May 4, 2010, absence in the filed attendance details, (Doc. # 35-2 at 1-6), but in her deposition Penaloza admits to being absent on both May 4, 2010, and on May 5, 2010. (Penaloza Dep. Doc. # 35 at 16). However, Penaloza does claim that she called in on May 4, 2010, and that her husband called in for her on May 5, 2010. (Id.).

Target alleges that Penaloza was absent several more times in early June 2010. (Doc. # 34 at 5; Doc. # 35-2 at 6). On June 11, 2010, Robinson and another team leader met with Penaloza to discuss her attendance issues once more. (Doc. # 34 at 5). No Corrective Action was issued, (Id.), but Penaloza claims that Robinson told her that any further absences could cost Penaloza her job. (Doc. # 9 at 1). In her deposition, Penaloza says:

> [Robinson] told me that I could not ask for a day off under any circumstances. That I could not call in to request an absence. And that I knew what would happen to me if from that day on I would call saying I was not going to work. During [t]he meeting she repeated those phrases about five or six times. She told me that the Target schedule was already set, and the fact that I called, that I would call in a certain day for an absence, it would send, it would make the Target schedule out of control. . . . She wanted me to work under any condition. Placing my life and my baby's life at risk.

(Penaloza Dep. Doc. # 35 at 19). Penaloza also says that

-3-

Robinson placed her on a "one-week probation and if during that week I missed work for any reason, that I would be terminated." (Id.). Penaloza says she was "harassed" during the June 11, 2010, meeting because "my feelings of feeling bad were violated. She didn't care about any risk to my baby." (Id. at 20).

Penaloza did not present any medical notes to Robinson during the meeting on June 11, 2010; in fact, Penaloza was not told that her pregnancy was high-risk until June 14, 2010, and she did not give any medical documentation to any of Target's representatives until July 22, 2010. (Doc. # 34 at 6, 9; Penaloza Dep. Doc. # 35 at 13-14, 22).

On June 13, 2010, Penaloza delivered a letter to Store Manager Dana Viens concerning Robinson's conduct during the meeting on June 11, 2010. (Doc. # 35-2 at 15). The letter also stated that Target had discriminated against her, harassed her, violated the Pregnancy Discrimination Act, violated the Family and Medical Leave Act, and that she had "decided to take [her] 'Leave of Absence' according to the [FMLA]." (Id. at 16). On June 14, 2010, Penaloza delivered another letter to Target, this one alleging pregnancy discrimination and informing Target that a charge would be filed with the Equal Employment Opportunity Commission. (Doc. # 35-2 at 17).

-4-

Also on June 14, 2010, Penaloza contacted Hewitt Absence Management (Target's Leave and Disability Team) to discuss taking FMLA leave. (Doc. # 34 at 6). On that day, Target (via Hewitt) gave Penaloza a "30-day provisional leave pending her return of the FMLA form signed by her medical provider within 15 days." (Doc. # 34 at 6; Penaloza Dep. Doc. # 35 at 23). At that time, Hewitt instructed Penaloza to have the FMLA form signed and to return it to Hewitt by mail. (Doc. # 34 at 6; Penaloza Dep. Doc. # 35 at 88). That same day, Hewitt mailed Penaloza a letter detailing her FMLA rights, reemphasizing the importance of having a healthcare provider certify the FMLA form, and telling her, "If we do not receive a complete and sufficient certification for you and cannot contact your health care provider, your leave may be delayed or denied." (Doc. # 34 at 7; Doc. # 9-3 at 2).

On June 15, 2010, Hewitt sent the FMLA medical certification form and a second letter to Penaloza. (Doc. # 34 at 7; Doc. # 35-2 at 30). That letter also articulated the fifteen day deadline and reminded Penaloza that if she failed to provide the required healthcare certification, then the approval of her leave could be delayed or denied. (Id.).

At the end of June 2010, or the beginning of July 2010, Penaloza requested and was given a fifteen day extension to

return the FMLA medical certification form. (Penaloza Dep.
Doc. # 35 at 24; Doc. # 34 at 7). She received a letter dated
July 1, 2010, that granted the additional fifteen days (making
the new deadline July 16, 2010) and reminded Penaloza that
failure to complete the form could result in a delay or denial
of approval. (Doc. # 35-2 at 34).

Penaloza claims that she requested and was granted a
second extension sometime before July 16, 2010, (Penaloza Dep.
Doc. # 35 at 25), but Hewitt claims they have no record of
Penaloza "contacting or communicating with anyone at Hewitt
after July 1, 2010," (Hewitt Decl. Doc. # 34-2 at ¶ 13).

On July 19, 2010, Hewitt sent Penaloza a letter denying
her request for FMLA leave. (Doc. # 34 at 8; Doc. # 9-3 at 1).
When asked in her deposition if she understood that "as of
July 19th, 2010, your FMLA leave request was denied," Penaloza
responded, "According to the letter, yes, but under what
conditions do they deny that due to a high-risk pregnancy?"
(Penaloza Dep. Doc. # 35 at 26).

According to Penaloza, she attended an appointment with
her healthcare provider on July 22, 2010, and a nurse
completed Penaloza's FMLA medical certification form at that
time. (Id.). Penaloza alleges that she mailed the completed
FMLA form to Hewitt that same day. (Id. at 24). Hewitt claims

-6-

to have no record of receiving the completed form. (Hewitt Decl. Doc. # 34-2 at ¶ 14).

Penaloza's copy of the completed FMLA form lists October 20, 2010, as Penaloza's return-to-work date. (Penaloza Dep. Doc. # 35 at 26; Doc. 45-8 at 2). Although Target allows for a total of sixteen weeks of FMLA leave time (instead of the FMLA mandated twelve weeks), (Doc. # 9-3 at 2; Doc. # 35-1 at 36), the October date is more than eighteen weeks after Penaloza's last day of work. (Doc. # 34 at 9).

Viens called Penaloza's home twice, and at least once at "the end of July [or] beginning of August," she spoke to Penaloza's husband. (Penaloza Dep. Doc. # 35 at 28; Doc. # 34 at 9). Penaloza says that she returned the call and left a message with the store operator. (Penaloza Dep. Doc. # 35 at 28). Penaloza says she believes Viens was calling "in regards to [Penaloza's] job." (Id.). Target claims that on August 13, 2010, Viens also sent Penaloza a letter asking her to contact Target to discuss a return-to-work date and informing her that Target would consider failure to contact them as confirmation of Penaloza's intent to resign. (Doc. # 34 at 9). Penaloza says that she did not receive the August 13, 2010, letter until December 22, 2010--and then only as an exhibit in an unemployment benefits proceeding. (Penaloza Dep. Doc. # 35 at

29).

On September 21, 2010, over three months after Penaloza's last day of work, Target terminated Penaloza. (Doc. # 34 at 10).

Penaloza filed a charge of discrimination with the EEOC on June 15, 2010. (Doc. # 35-2 at 8). On the charge, Penaloza checked only the box labeled "sex." (Id.). The charge contains the following factual allegations:

> Personal Harm: From January 24, 2010, after I announced that I was pregnant, to the current date; my hours of work have been reduced from eighty hours bi-weekly. On June 11, 2010, I was disciplined for calling out sick and placed on probation.
> Respondent's Reason for Adverse Action: No reason has been provided for my hours of work being reduced, Erin M. Robinson, Soft Line Department Manager, informed me that I was being disciplined because of my absences and that I should not call out even if I am sick.
> Discrimination Statement: I believe that I am being discriminated against on the basis of my sex; female; pregnancy related, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.).

Penaloza initiated this action on November 30, 2011. (Doc. # 1). Penaloza filed an Amended Complaint against Target on December 28, 2011. (Doc. # 9).

## II.   Legal Standard

Summary judgment is appropriate "if the movant shows

-8-

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A mere factual dispute is not enough to defeat a properly pled motion for summary judgment; instead, only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

When considering a motion for summary judgment, the Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357

-9-

F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  After a moving party has discharged its burden, "the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

Furthermore, if there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). However, when a non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

The Court notes that Penaloza is proceeding *pro se*. (Doc. # 9 at 4). Therefore, the Court will not hold Penaloza to strict accountability of compliance with the Federal Rules of Civil Procedure and will construe the amended complaint more

leniently than formal pleadings drafted by lawyers. <u>Holifield v. Reno</u>, 115 F.3d 1555, 1561 (11th Cir. 1997). However, "the plaintiff must still meet the essential burden of establishing that there is a genuine issue as to a fact material to [her] case." <u>Id.</u> (citing <u>Brown v. Crawford</u>, 906 F.2d 667, 669-70 (11th Cir. 1990)).

## III. <u>Analysis</u>

Although Penaloza states several of her claims clearly, she also occasionally uses terms that may indicate she intended to state additional claims, as well. Considering her *pro se* status, the Court will address the claims Penaloza specifically raised, as well as the claims that she less clearly alleges.

The Amended Complaint specifically alleges: pregnancy discrimination in violation of Title VII, the Pregnancy Discrimination Act, and the Florida Civil Rights Act; violation of the Family and Medical Leave Act; and disability discrimination under the Americans with Disabilities Act. (Doc. # 9). However, Penaloza also uses a heading that reads "Pregnancy Discrimination and *Retaliation*," suggesting an additional claim of Retaliation under Title VII. (<u>Id.</u> at 2) (emphasis added). Furthermore, Penaloza uses the term "harassment attitude" in the "Background" section of her

-11-

Complaint when referencing the behavior of one of her supervisors. (Id. at 1). Without more, the Court would not consider this single use of the word "harassment" within a recitation of the facts as indicative of a claim of sexual harassment under Title VII. However, the term reappears in later filings, and so, in the interest of thoroughness, the Court will briefly address the viability of a possible sexual harassment claim as well. This Court dismissed Penaloza's ADA discrimination claim on July 25, 2012. (Doc. # 32).

Accordingly, before the Court are Penaloza's claims of (1) pregnancy discrimination, (2) Title VII retaliation, (3) sexual harassment, and (4) violation of the FMLA.

## A. **Failure to Exhaust Administrative Remedies**

Before filing a suit under Title VII, a plaintiff must exhaust her available administrative remedies by first filing a charge with the EEOC. Anderson v. Embarq / Sprint, 379 F. App'x 924, 926 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)). "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." Anderson, 379 F. App'x at 926. The Eleventh Circuit has stated that a plaintiff's complaint is "limited by the scope of the EEOC investigation which can reasonably be

expected to grow out of the charge of discrimination." Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000). See also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970) (noting that the allegations in a complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge).

Therefore, claims -- even new claims -- "are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint . . . ." Anderson, 379 F. App'x at 926 (internal quotations omitted). Conversely, "allegations of new acts of discrimination are inappropriate." Gregory v. Dep't of Human Res., 355 F.3d 1277, 1279-80 (11th Cir. 2004). Nonetheless, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." Sanchez, 431 F.2d at 460-61. As such, "the scope of an EEOC complaint should not be strictly interpreted." Id. at 465.

Therefore, the proper inquiry here is whether Penaloza's Amended Complaint was like or related to, or grew out of, the allegations contained in her EEOC charge. See Gregory, 355 F.3d at 1280. Penaloza checked only the box labeled "sex" on her EEOC charge of discrimination; she did not check the box

-13-

for "retaliation," or the box labeled "continuing action," and her factual allegations do not suggest those violations. (Doc. # 35-2 at 8). Thus, the Court must consider whether any claims Penaloza may have intended to state concerning Title VII retaliation or sexual harassment through hostile work environment (normally a "continuing action") are procedurally barred.

The Court finds that Penaloza's Title VII retaliation claims are not barred for failure to exhaust administrative remedies. "'[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.'" Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988) (quoting Gupta v. E. Tex. State Univ., 654 F.2d 411, 411 (5th Cir. Unit A Aug. 1981)). Additionally, courts have recognized that "there are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case." Id. Therefore, this Court can consider

-14-

Penaloza's retaliation claim because it grows out of the sex discrimination alleged in her EEOC charge.

While the Court acknowledges that reading EEOC charges liberally is encouraged, there is simply no need to determine whether Penaloza has exhausted her administrative remedies regarding a hostile work environment claim. For reasons unrelated to the exhaustion requirement and detailed below, the Court declines to consider any claim of hostile work environment that Penaloza may have intended to state.

**B. Title VII, PDA, and FCRA Claims**

    **1. Pregnancy Discrimination**

Penaloza alleges a claim for pregnancy discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, (2) the Pregnancy Discrimination Act (PDA), and (3) the Florida Civil Rights Act (FCRA). Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The PDA amended Title VII by providing that the prohibition against employment-related discrimination "on the basis of sex" includes discrimination based on

-15-

pregnancy, childbirth, or related medical conditions. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994).

The analysis applied to PDA cases is the same as the analysis in other Title VII sex discrimination cases. Armstrong, 33 F.3d at 1312. Furthermore, "decisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act." Slater v. Energy Servs. Grp. Intern. Inc., 441 F. App'x 637, 640 (11th Cir. 2011). See also Gamboa v. Am. Airlines, 170 F. App'x 610, 612 (11th Cir. 2006) (stating that claims under Title VII and the FCRA are analyzed under the same framework). Some courts have debated whether the FCRA provides a cause of action for pregnancy discrimination. Compare DuChateau v. Camp Dresser & McKee, Inc., 822 F. Supp. 2d 1325 (S.D. Fla. 2011) (finding that the FCRA does not prohibit pregnancy discrimination), and Boone v. Total Renal Labs., Inc., 565 F. Supp. 2d 1323 (M.D. Fla. 2008) (finding that the FCRA does not provide a cause of action for pregnancy discrimination), with Terry v. Real Talent, Inc., No. 8:09-cv-1756-T-30TBM, 2009 WL 3494476 (M.D. Fla. Oct. 27, 2009) (finding that the FCRA does provide a cause of action for pregnancy discrimination), and Carsillo v. City of Lake Worth, 995 So. 2d 1118 (Fla. 4th DCA 2008) (finding that the

-16-

FCRA's prohibition of sex discrimination includes discrimination based on pregnancy). Without reaching the issue of whether the FCRA does provide for such a cause of action, those claims would be covered by the Court's analysis of Penaloza's pregnancy discrimination claims brought under Title VII and the PDA. Accordingly, the Court's analysis below applies to Penaloza's claims under all three statutes.

It is well settled that "there are two types of discrimination actionable under Title VII": disparate treatment and disparate impact. Armstrong, 33 F.3d at 1313. Here, Penaloza alleges only a disparate treatment claim. (Doc. # 9).

A plaintiff may employ any of three means to establish a prima facie case of disparate treatment employment discrimination: (1) direct evidence of discriminatory intent, (2) statistical analysis evidencing a pattern of discrimination, or (3) circumstantial evidence meeting the test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Verbraecken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989). Penaloza has presented neither statistical analysis evidencing a pattern of discrimination, nor direct evidence of discriminatory intent. Thus, Penaloza's circumstantial

evidence considered under the McDonnell Douglas test is discussed below.

### a.   Analysis of Circumstantial Evidence under *McDonnell Douglas*

When analyzing allegations supported by circumstantial evidence under Title VII, the Court follows the burden-shifting analysis established in McDonnell Douglas and its progeny. See Gamboa, 170 F. App'x at 612 (citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Under the McDonnell Douglas framework, a plaintiff-employee bears the initial burden of establishing a prima facie case of discrimination against the defendant-employer. McDonnell Douglas, 411 U.S. at 802.

If the plaintiff successfully establishes a prima facie case, a rebuttable presumption of discrimination is created and the burden of proof shifts to the defendant. Id. at 802-03; Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006) (citing EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1272 (11th Cir. 2000)). To rebut the presumption created by a plaintiff's prima facie case, the defendant must provide "legitimate, nondiscriminatory reason[s]" for the employment action taken against the plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.

-18-

248, 254 (1981); <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1331 (11th Cir. 1998). However, "[t]his is a burden of production, not persuasion." <u>Standard</u>, 161 F.3d at 1331. "[The defendant] must merely produce evidence that could allow a rational fact finder to conclude" that its actions were not motivated by discriminatory animus. <u>Id.</u>

If the defendant produces such evidence, the burden shifts back to the plaintiff. <u>McDonnell Douglas</u>, 411 U.S. at 802-03. The plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing her prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted). However, "A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination." <u>Worley v. City of Lilburn</u>, 408 F. App'x 248, 251 (11th Cir. 2011).

### b.  <u>Penaloza's Prima Facie Case</u>

To establish a prima facie case of pregnancy discrimination, Penaloza must show that she "(1) was a member

-19-

of a protected class, (2) was qualified for the job she held, (3) suffered an adverse employment action, and (4) suffered from a different application of work or disciplinary rules." Armstrong, 33 F.3d at 1314. "The burden of establishing a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253.

It is not disputed that Penaloza, as a pregnant person, was a member of a protected class. Further, Target never denies that Penaloza was qualified for the job she held. Thus, the Court finds that Penaloza has satisfied the first and second elements. Additionally, although both Penaloza and Target identify multiple incidents that could be considered adverse employment actions -- (1) the reduction in Penaloza's hours beginning in February 2010, (2) the meetings and disciplinary actions relating to Penaloza's alleged absences and late arrivals, and (3) her termination on September 21, 2010, (Doc. # 9; Doc. # 42) -- it is undeniable that Penaloza's termination is an adverse employment action. See, e.g., Blue v. Dunn Const. Co., Inc., 453 F. App'x 881, 884 (11th Cir. 2011) ("We have determined that an adverse employment action includes termination, failure to hire, or demotion.") (internal quotations omitted). Thus, the third prong is also satisfied.

-20-

Even so, Target argues that summary judgment is appropriate because no issues of material fact exist due to Penaloza's failure to allege facts that could satisfy the fourth prong of her prima facie case of pregnancy discrimination. Specifically, Target argues that Penaloza has failed to offer examples of employees who were similarly situated but outside her class who were disciplined in different ways or subjected to different rules than she was. (Doc. # 34 at 1, 16). The Court agrees that Penaloza has failed to identify any such employees and that the fourth prong is not satisfied.

"When determining whether employees are similarly situated for the purposes of establishing a prima facie case of discrimination, we must consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Castillo v. Roche Labs., Inc., No. 11-12219, 2012 WL 1648873, at *2 (11th Cir. May 11, 2012). But, "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield, 115 F.3d at 1562. The Court finds no evidence of any similarly situated employees whom Target might have treated differently than Penaloza.

-21-

Penaloza has presented no evidence that the number of hours assigned to any of her coworkers remained the same after January.

Likewise, Penaloza has failed to present any evidence of other employees whom Target accused of failing to call before an unscheduled absence -- regardless of whether or not that accusation was accurate or if the employee disputed it -- who were reprimanded differently than Penaloza, or who were not reprimanded at all. However, Target provided the Court with a list of fourteen employees who, like Penaloza, were disciplined after Target accused them of not calling in before an unscheduled absence. (Doc. # 34 at 5).

Finally, Penaloza has not alleged or presented evidence that any other employee who failed to return to work after a fourteen week absence retained their position.

Penaloza has presented *no* relevant evidence to satisfy the fourth prong of her prima facie case, and therefore has not shown that there is any genuine issue of material fact to preclude summary judgment on this issue. Thus, the Court finds that Penaloza has not stated a prima facie case of pregnancy discrimination.

c.   **Target's Legitimate, Nondiscriminatory Reasons for Termination**

-22-

For the sake of thoroughness, however, the Court will also discuss Target's allegedly legitimate and non-discriminatory reasons for taking adverse employment actions against Penaloza.

Penaloza has not established her prima facie case, but even if she had done so, Target's burden of rebuttal is "exceedingly light," and Target "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." Weston-Brown v. Bank of Am. Corp., 167 F. App'x 76, 80 (11th Cir. 2006) (internal citations omitted). "The reason offered by an employer for an action does not have to be a reason that the judge or jurors would act on or approve. Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999) (internal citation and quotations omitted). "[I]t is not the court's role to second-guess the wisdom of an employer's decision." Alexander, 207 F.3d at 1341.

Target has proffered legitimate, non-discriminatory reasons for each of the allegedly adverse actions taken against Penaloza. Target contends that Penaloza's reduction in hours resulted from reduced sales and was a business judgment

-23-

decision made with profitability in mind. (Doc. # 34 at 17-18). Target also suggests that the reduction in hours was made throughout Penaloza's entire department: "After January, sales typically decrease and labor hours are reduced to meet the lower demand. In February 2010, team members' hours in the Store's Softlines Department (where Penaloza worked) were reduced due to the decreased sales." (Id. at 4) (internal citations omitted). Target also points out that scheduling is done by "an electronic system" that "does not consider the team members' gender, pregnancy, or any other protected factor," but instead schedules team members "based on availability and the Store's business needs." (Viens Decl. Doc. # 34-1 at ¶ 12).

Additionally, Target claims that the May 19, 2010, and June 11, 2010, meetings and their various ramifications were both attempts to address "problems caused by [Penaloza's] unscheduled absences and tardiness" and were, therefore, motivated by legitimate, non-discriminatory reasons. (Doc. # 34 at 17). Furthermore, Target's handbook identifies unapproved absences and tardiness as terminable offenses. (Doc. # 35-1 at 28).

Finally, Target also claims that Penaloza's failure to return to work for over fourteen weeks constitutes a

-24-

legitimate, non-discriminatory reason for Penaloza's termination. (Doc. # 34 at 18). Target points out that even if Penaloza had been approved for FMLA leave, her leave time would have expired by the fourteen week mark. (Id.). Target argues that businesses need to fill empty positions, and it is reasonable to terminate an employee who fails to report for work. (Id.).

The Court finds that ample case law supports Target's proffered reasons. Reducing an employee's hours because of reduced sales or funding can be done for legitimate, non-discriminatory reasons, so long as the employee was not singled out improperly. See Amos v. Tyson Foods, Inc., 153 F. App'x 637, 645 (11th Cir. 2005) ("[The defendant's] reason for altering the overtime schedule was to reduce costs. . . . This was accomplished by assigning the tasks to workers during their regular shifts and using fewer overtime workers. This reason is both legitimate and nondiscriminatory . . . ."); Beard v. Annis, 730 F.2d 741, 744 (11th Cir. 1984) (noting that "[t]he circumstances surrounding the reduction of [plaintiff]'s hours and salary [did] not raise an inference of discriminatory treatment" when there was a decrease in funding and program enrollment, but an increase in paperwork).

Poor job performance -- including excessive absences or

-25-

late arrivals -- is a legitimate, non-discriminatory reason for adverse employment action. See Damon v. Flemming Supermarkets of Fla., 196 F.3d 1354, 1361 (11th Cir. 1999) (finding "poor job performance" as a legitimate, non-discriminatory reason for terminating an employee); Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) ("[The defendant] has offered several reasons for firing [the plaintiff]: poor work performance, failure to follow department procedures, tardiness . . . . [The defendant] has met its burden of presenting a legitimate, nondiscriminatory reason for its act . . . .").

Additionally, "Not being physically able to come to work when physical attendance is a requirement of one's job is a legitimate reason for an employer to take an adverse employment action against an employee." Anderson v. JP Morgan Chase & Co., 418 F. App'x 881, 884 (11th Cir. 2011). See Gilchrist v. Bolger, 733 F.2d 1551, 1553 (11th Cir. 1984) (concluding that the employer's explanation that it did not promote plaintiff because of her poor attendance record was a legitimate, nondiscriminatory reason).

Thus, for these reasons, the Court finds that Target has provided a legitimate, non-discriminatory reason for its actions.

### d. **Penaloza's Pretext Arguments**

"Once a defendant articulates a legitimate, non-discriminatory reason for its action, the initial inference of discrimination 'drops' from the case." Schoenfeld, 168 F.3d at 1269. A plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the allegedly legitimate, non-discriminatory reason the employer provides is a mere pretext for the prohibited, discriminatory conduct. See id.

Showing pretext requires a plaintiff to show a genuine issue of material fact both as to whether Target's proffered reasons are false *and* as to whether discrimination was the real reason for Target's actions. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 518-19 (1993). Penaloza has failed to do so. Penaloza has provided little evidence suggesting that Target's proffered legitimate, non-discriminatory reasons are pretext, and no evidence that the actual reason for Target discipline, termination, or reduction of Penaloza's hours was because she was pregnant. Penaloza has supplied no evidence that would "allow a factfinder to disbelieve [Target's] proffered explanation for its actions." Combs, 106 F.3d at 1532.

Thus, the Court finds that Target is entitled to summary

judgment, and grants its motion as to Penaloza's discrimination claims.

## 2.    __Title VII Retaliation Claim__

Title VII prohibits retaliation by an employer against an individual based on the individual's opposition to an unlawful employment practice or filing of a charge of discrimination. 42 U.S.C. § 2000e-3(a). Under the PDA, 42 U.S.C. § 2000e(k), Title VII prohibits retaliation based on an employee's filing a charge of pregnancy discrimination. See Daniels v. Hale, 350 F. App'x 380, 386 (11th Cir. 2009). To establish a prima facie case of retaliation, a plaintiff must show that: (1) there was a statutorily protected activity; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. Dixon v. Hallmark Cos., 627 F.3d 849, 856 (11th Cir. 2010).

Penaloza offers no direct evidence of retaliation, and therefore, the familiar McDonnell Douglas burden shifting analysis applies. See Goldsmith v. Bagby, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the burden shifting framework to a Title VII retaliation case).

Although Target does not deny that Penaloza's EEOC charge was statutorily protected conduct, or that she suffered an adverse employment action when she was terminated, Target

-28-

argues that Penaloza has failed to prove a causal connection between her EEOC charge and her termination. The Court agrees.

Penaloza offers no evidence other than the timing of the two events to establish a causal connection. (Doc. # 42 at 15-16). The Supreme Court has stated that temporal proximity between an employer's knowledge of protected activity and an adverse employment action may be sufficient evidence to establish a causal connection if the temporal proximity is "very close." <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001). The Eleventh Circuit found that an adverse employment action occurring three months after a protected activity took place is not sufficiently proximate to show causation. <u>Drago v. Jenne</u>, 453 F.3d 1301, 1308 (11th Cir. 2006).

Penaloza filed the EEOC charge of discrimination on June 15, 2010; she was terminated fourteen weeks later on September 21, 2010. (Doc. # 42 at 11; Doc. # 42 at 15). Without more, no causal connection is established by the temporal proximity between Penaloza filing her EEOC charge and Target terminating her. <u>Id.</u>

Additionally, even if Penaloza stated a prima facie case of Title VII retaliation, she provides no evidence suggesting that Target's proffered reason for her termination -- her

failure to return to work -- is pretext. Accordingly, the
Court grants Target's motion for summary judgment as to
Penaloza's Title VII retaliation claim.

### 3.   **Title VII Sexual Harassment Claim**

The Court acknowledges that Penaloza occasionally uses
the phrase "harassment attitude" to describe the behavior of
Robinson. (Doc. # 9 at 1; Penaloza Dep. Doc. # 35 at 18; Doc.
# 42 at 6). Thus, in an abundance of fairness to the *pro se*
plaintiff, the Court considers the possibility of a sexual
harassment claim.

Penaloza uses the term "harassment attitude" only once in
her Complaint, and even then it is in the "Background" section
when describing Robinson's behavior during the meeting on June
11, 2010. (Id. at 1). Without more and in this context, the
Court does not consider the single use of the word
"harassment" as sufficient to indicate a claim of sexual
harassment under Title VII. Instead, the closest Penaloza
comes to alleging the potential claim is in her response, in
which she writes the she filed an EEOC charge "due to the
harassment and hostile attitude from Target's Supervisor."
(Doc. # 42 at 6).

As the Eleventh Circuit has stated, "At the summary
judgment stage, the proper procedure for plaintiffs to assert

-30-

a new claim is to amend the complaint in accordance with
Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint
through argument in a brief opposing summary judgment."
<u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th
Cir. 2004) (citing <u>Shanahan v. City of Chicago</u>, 82 F.3d 776,
781 (7th Cir. 1996)).

Nevertheless, Penaloza has presented no evidence of *quid
pro quo* sexual harassment, and the facts alleged do not rise
to the "severe and pervasive" level required to state a
successful claim for sexual harassment based on a hostile work
environment. <u>See</u> <u>Hulsey v. Pride Rest.</u>, 367 F.3d 1238, 1244
(11th Cir. 2004) (setting out the elements required to state
a successful sexual harassment claim and discussing the
difference between *quid pro quo* or tangible action harassment
and hostile work environment harassment).

C.   **Family and Medical Leave Act (FMLA)**

The FMLA provides that "an eligible employee shall be
entitled to a total of 12 workweeks of leave during any 12-
month period . . . [b]ecause of the birth of a son or daughter
of the employee and in order to care for such son or
daughter." 29 U.S.C. § 2612(a)(1). When leave is foreseeable,
the employee must give an employer not less than thirty days
notice before the leave is to begin. 29 U.S.C. § 2612(e)(1).

-31-

If leave is not foreseeable, the employee is to provide such notice as is practicable. <u>Id.</u>

The Eleventh Circuit has recognized that the FMLA creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA], and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1293 (internal quotations omitted).

Because Penaloza never clearly states whether she intended an interference claim or a retaliation claim, the Court will address both types of claims below.

## 1. **FMLA Interference Claim**

According to the Eleventh Circuit, "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." <u>Strickland v. Water Works & Sewer Bd.</u>, 239 F.3d 1199, 1206-07 (11th Cir. 2001). "Alternatively, an employee may demonstrate that the employer interfered with the FMLA benefit." <u>Lowery v. Strength</u>, 356 F. App'x. 332, 334 (11th Cir. 2009). Although a retaliation claim

requires the plaintiff to show that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus," the employer's intent is immaterial in an interference claim. Strickland, 239 F.3d at 1207.

In Johnson v. Vintage Pharmaceuticals, Inc., 185 F. App'x 798 (11th Cir. 2006), the Eleventh Circuit addressed a situation similar to the one before the Court. In Johnson, a pregnant plaintiff did not return to work after November 23, 2002. Id. at 799. The plaintiff provided doctor's notes for her absences through February 2003, but the defendant claimed that no FMLA medical certification form was ever provided. Id. The plaintiff was terminated on February 10, 2003, for failure to present a timely FMLA medical certification form. Id. at 800. As of the date of her termination, the plaintiff had been absent from work more than twelve workweeks during the preceding twelve-month period. Id.

The district court entered judgment as a matter of law on behalf of the defendant, because it "already had satisfied its FMLA mandated 12 workweek leave obligation to [the plaintiff] when she was terminated." Id. The Eleventh Circuit affirmed and wrote, "That [the defendant] stated, at the time of termination, that [the plaintiff] was terminated for failure to present timely a FMLA medical form does not obviate the

undisputed fact that Plaintiff's 12 workweek FMLA entitlement already was exhausted." Id.

As in Johnson, the debate surrounding the medical certification form is less problematic for Penaloza than the fact that she was given fourteen weeks of leave before she was terminated. Penaloza's FMLA interference claim cannot escape summary judgment, because, like the plaintiff in Johnson, Penaloza's FMLA entitlement was already exhausted when she was terminated.

Employers may choose to give their employees more leave time than the FMLA mandates, but as the Eleventh Circuit found in McGregor v. Autozone, Inc., 180 F.3d 1305 (11th Cir. 1999), "The statute does not suggest that the 12 week *entitlement* may be extended." Id. at 1308 (emphasis added); see also Bender v. City of Clearwater, No. 8:04-CV-1929, 2006 WL 1046944, at *11 (M.D. Fla. Apr. 9, 2006) ("As long as the employee has been given the requisite leave period, the statute does not forbid an employer from discharging an employee who fails to come back to work at the expiration of the leave. An employee's insistence on taking more leave than is allowed by the FMLA is not protected conduct.") (internal citations omitted).

Penaloza was given more than her twelve weeks of FMLA leave, and therefore she cannot prove that she was denied any

-34-

benefit to which she was entitled. Thus, the Court grants summary judgment in Target's favor with regard to Penaloza's FMLA interference claim.

### 2. **<u>FMLA Retaliation Claim</u>**

Penaloza cannot establish a prima facie case of retaliation under FLMA. A prima facie case of retaliation under the FMLA requires the same showing required for a Title VII retaliation claim: (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two. <u>See</u> <u>Krutzig v. Pulte Home Corp.</u>, 602 F.3d 1231, 1234 (11th Cir. 2010). Just as in her Title VII retaliation claim, Penaloza has presented no direct evidence of retaliation. Thus, Penaloza's FMLA retaliation claim relies on circumstantial evidence, and the burden-shifting framework of <u>McDonnell Douglas</u> applies. <u>Brungart v. BellSouth Telecomm., Inc.</u>, 231 F.3d 791, 798 (11th Cir. 2000).

Although Penaloza's FMLA request was statutorily protected conduct, and although she suffered an adverse employment action when she was terminated, Penaloza fails to show that there is a causal connection between her FMLA request and her termination. Just as in her Title VII retaliation claim, Penaloza alleges no facts other than

-35-

temporal proximity to establish a causal connection between her request for FMLA leave and her termination. As discussed above, the Eleventh Circuit has held that without additional evidence, an adverse employment action taken three months after protected activity is not sufficiently proximate to show causation. Drago, 453 F.3d at 1308.

Penaloza notified Target that she would begin the FMLA leave request process on June 14, 2010; she was terminated more than fourteen weeks later. (Doc. # 34 at 20). Not only is fourteen weeks two weeks beyond the Eleventh Circuit's three month period, it is also two weeks beyond the twelve weeks allotted by the FMLA. 29 U.S.C. § 2612(a)(1). Far from being terminated *because* she requested FMLA leave, Penaloza kept her job for almost three weeks *after* her FMLA leave would have run out.

Additionally, even if Penaloza stated a prima facie case of FMLA retaliation, as explained above, she offers no evidence to prove that Target's proffered reason for her termination -- her failure to return to work -- is pretext. Olmsted, 141 F.3d at 1460. Accordingly, the Court therefore grants summary judgment with regard to Penaloza's FMLA retaliation claim in favor of Target.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Target Corporation's Motion for Summary Judgment (Doc. # 34) is **GRANTED.**

(2)   Defendant Target Corporation's Motion for Partial Judgment on the Pleadings (Doc. # 46) is **DENIED as moot.**

(3)   The Clerk is directed to enter judgment in favor of Defendant Target Corporation and against Plaintiff Anamaria Penaloza and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>27th</u> day of December, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Parties and Counsel of Record

-37-